UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:05CV-547-H

LAWRENCE IRVING BREED, SR          PLAINTIFF

V.

CREDIT COLLECTION SERVICES, INC.          DEFENDANTS
AND TRANS UNION, LLC

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lawrence Breed ("Plaintiff") filed suit against Defendants Credit Collection Services, Inc. ("CCS") and Trans Union, LLC ("Trans Union") (collectively "Defendants") for violations of the Fair Credit Reporting Act ("FCRA") and the Fair Debt Collection Practices Act ("FDCPA"). Defendants have filed separate motions for summary judgment. For the reasons explained below, the Court must decline to grant these motions at this time.

I.

On June 22, 2004, Plaintiff discovered an incorrect report of an alleged unpaid debt on his Trans Union credit report. The alleged debt was owed to Nationwide Insurance, Inc. in the amount of $637.03. Because Plaintiff has had virtually no business dealings with Nationwide, he informed Nationwide that the alleged debt was an error. On November 2, 2004, Plaintiff received a letter from Nationwide confirming that the amount of $637.03 that appeared on his credit report was in error. That letter also advised Plaintiff that Defendant CCS was notified on September 15, 2004 to "remove this [amount] from the Credit Bureau." CCS maintains in its

briefs that it "forwarded an electronic request on September 15, 2004, to credit reporting agencies requesting the deletion of Plaintiff's account." CCS has submitted two exhibits purporting to represent the notice it gave to Trans Union on September 15, 2004, supported by the affidavit of a vice president of CCS indicating that the documents constituted the electronic request. Trans Union maintains that it received no such notice. In any case, the documents constituting the purported notice to Trans Union are very brief and cryptic at best, consisting of coded computer instructions.

      In the meantime, Plaintiff also pursued other relief. He sent a letter to Defendant Trans Union, which Trans Union received July 30, 2004. That letter requested that Trans Union "update the record to show PAID IN FULL, NEVER LATE, or delete the item as soon as possible." Trans Union initiated an investigation at that time by sending a Consumer Dispute Verification form ("CDV," a standard form used by Trans Union) to Defendant CCS. Trans Union sent the CDV to CCS because CCS had updated Plaintiff's account information in May 2004. CCS responded to the CDV by verifying Plaintiff's name, current address, and social security number, and by confirming that the account information was "verified as reported." On August 27, 2004, Trans Union forwarded to Plaintiff the results of its investigation. This dispute will herein be referenced as the "Summer 2004 dispute."

      Seventeen days later, on September 13, 2004, Plaintiff again contacted Trans Union and disputed his account. Trans Union responded quickly, stating that "your creditor(s) previously verified as accurate [the CCS account] listed below." Trans Union also informed Plaintiff that "under the Fair Credit Reporting Act, we consider this dispute frivolous and we will reinvestigate the item(s) unless you can provide court papers or a recent, authentic letter from the

creditor(s) that explains what information should be updated." Trans Union terminated its reinvestigation at that time.

Seven months later, on April 11, 2005, Trans Union received another communication from Plaintiff disputing his account. Trans Union sent an Automated Credit Dispute Verification form ("ACDV," another standard form used by Trans Union) to CCS and requested that CCS "provide complete ID (incld [sic] SSN, DOB, Generation code, etc)". CCS yet again confirmed that the account belonged to Plaintiff. On May 6, 2005, Trans Union sent Plaintiff the results of this further investigation. This dispute will herein be referenced as the "Spring 2005 dispute."

On August 23, 2005, Plaintiff filed this lawsuit. Plaintiff alleges that Defendants CCS and Trans Union violated 15 U.S.C. § 1681 *et seq.* and 15 U.S.C. § 1692 *et seq.* Plaintiff alleges the remaining Defendants failed in their duty under the FCRA "to adopt reasonable procedures to assure that the information it supplied to third parties on consumers was fair and equitable to the consumer, with regard to the accuracy and relevancy of such information." This duty is imposed on consumer credit reporting agencies by 15 U.S.C. § 1681e(b), which requires such agencies to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." The complaint alleges that Defendants are consumer reporting agencies as that term is defined by the FCRA. *See* 15 U.S.C. § 1681a(f).

Plaintiff also alleges that Defendants used "unfair and unconscionable means to collect a debt that was admittedly in error." Such means are prohibited by the FDCPA–specifically 15 U.S.C. § 1692f and 15 U.S.C. § 1692g. Defendant CCS is a "debt collector" as that term is

3

defined by the FDCPA. *See* 15 U.S.C. § 1692a(6).[1]

II.

Summary judgment is proper when "a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Federal Rules of Civil Procedure allow summary judgment to be granted if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

To sustain a claim under Section 1681e(b) of the Fair Credit Reporting Act ("FCRA"), Plaintiff must prove: (1) Defendant was negligent in that it failed to follow reasonable procedures to assure maximum possible accuracy of information about the plaintiff; (2) Defendant reported inaccurate information about the plaintiff; (3) Plaintiff was injured; and (4) Defendant's negligence was the proximate cause of such injury. *Morris v. Credit Bureau of Cincinnati*, 563 F.Supp. 962, 967 (S.D. Ohio 1983). *See also Bryant v. TRW, Inc.*, 487 F.Supp. 1234, 1238 (E.D. Mich. 1980), *aff'd Bryant v. TRW, Inc.*, 689 F.2d 72 (6th Cir. 1982). The standard of conduct by which a trier of fact must judge the accuracy of credit reporting agency procedures is "what a reasonably prudent person would do under the circumstances." *Bryant*, 689 F.2d at 78 (citing *Thompson v. San Antonio Retail Merchants Ass'n*, 682 F.2d 509, 513 (5th Cir. 1982)).

The standard under 15 U.S.C. §§ 1692f and 1692g of the Fair Debt Collection Practices

---

[1] The Court has previously dismissed the complaint as to Nationwide Insurance, Inc.

Act ("FDCPA") is more flexible. Section 1692f forbids debt collectors from using "unfair or unconscionable means to collect any debt." That section then gives a non-exhaustive list of such conduct. *See* 15 U.S.C. § 1692f(1) - (8). Section 1692g mandates that after a debt collector receives notification from a consumer that a debt is disputed, it must cease collection until the debt collector obtains verification of the debt. *See* 15 U.S.C. § 1692g(b). One issue may be quickly addressed. Defendant Trans Union is not a debt collector as defined by the FDCPA. *See* 15 U.S.C. § 1692a(6). Plaintiff has not pled that Trans Union is such, and Defendant Trans Union has asserted that its "principal purpose of business does not involve the collection of debts." Plaintiff himself acknowledged that Trans Union never attempted to contact him directly to pay any outstanding debt. Thus, this Court can conclude that Trans Union cannot be held liable under 15 U.S.C. §§ 1692f and 1692g as it is not a "debt collector" as defined by that statute. Thus, the FDCPA claims against Trans Union must be dismissed.

Therefore, the FDCPA claims remain against Defendant CCS, and the FDCA claims remain against both Defendants.

### III.

As to the remaining claims, disputed issues of material fact appear to bar any summary judgment at this time. The resolution of this case seems to revolve around whatever communication transpired between CCS and Trans Union on September 15, 2004: whether that communication was transmitted by CCS, whether it was received by Trans Union, and if so, whether any action was taken upon the Plaintiff's file.

First, the Court will consider the FDCA claim against First Union. Trans Union is not liable under the FCRA where an item of information it received from a source that it reasonably

5

believes is reputable turns out to be inaccurate. On the other hand, it may have liability where the agency previously received notice of prevalent unreliable information from the furnisher which would put the credit reporting agency on notice that systemic problems existed within the furnisher's system. *Sarver v. Experian Information Solutions*, 390 F.3d 969, 971 (7th Cir. 2004). However, that rule would only excuse the Summer 2004 dispute Plaintiff filed with Trans Union. The second and third disputes Plaintiff filed with Trans Union occurred contemporaneously with or subsequent to the September 15, 2004 communication, and Trans Union's failure to correct his records at that point might not satisfy the "reasonably prudent person" standard of *Bryant v. TRW Inc.*, depending on whether Trans Union in fact received a communication from CCS on September 15, 2004.

Likewise, CCS is not entitled to summary judgment on the FCRA or FDCPA claims at this time. On the facts presented to the Court at this time, two principal possibilities exist. First, CCS failed altogether on September 15, 2004, to ask Trans Union to remove the Nationwide notation from Plaintiff's credit report. Second, CCS did so, but Trans Union failed to remove the notation, and then CCS mistakenly reconfirmed the Nationwide notation during the Spring 2005 dispute. Under either scenario, the "reasonably prudent person" FCRA standard of *Bryant v. TRW, Inc.* might not be satisfied. Furthermore, CCS's only briefed defense to the FDCPA claim is that CCS actually asked Trans Union to remove the negative Nationwide item from the Plaintiff's credit report, and that Trans Union failed to do so. The simple fact that it is still unclear exactly what transpired during the September 15, 2004 communication demonstrates that there remains a significant genuine issue of material fact in this case.

Being otherwise sufficiently advised,

6

IT IS HEREBY ORDERED that Trans Union's motion for summary judgment on the FDCPA claims against it is GRANTED, and therefore the FDCPA claim against Trans Union DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that remaining motions for summary judgment as to Trans Union and CCS are DENIED.

This is not a final order.

cc: Counsel of Record