UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:05CV-547-H

LAWRENCE IRVING BREED, SR.                                                                    PLAINTIFF

V.

NATIONWIDE INSURANCE COMPANY, ET AL.                                            DEFENDANTS

**MEMORANDUM OPINION**

Plaintiff, Lawrence Breed ("Plaintiff"), filed suit against Credit Collection Services, Inc. ("CCS") and Trans Union, LLC ("Trans Union") for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Defendants have filed several motions: one for summary judgment and another to exclude or limit testimony by one of Plaintiff's witnesses.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, "summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). On summary judgment, the evidence before the Court must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir.2006).

I.

In the complaint, Plaintiff alleges that CCS violated 15 U.S.C. §§ 1692f and 1692g of the FDCPA by "using unfair and unconscionable means to collect a debt that was admittedly in

error." Despite this statement, Plaintiff alleges no facts to support the contention that CCS ever collected or attempted to collect the amount in dispute. The FDCPA prohibits debt collectors from using unfair or unconscionable means to "collect or attempt to collect any debt." 15 U.S.C. § 1692f. It also mandates that debt collectors give notice to consumers "in connection with the collection of any debt." 15 U.S.C. §1692g.

Plaintiff admits that CCS "did not directly attempt to collect the debt from plaintiff..." (Pl.'s Renw.'d Resp. to Summ. J. 3; Breed Dep. 196, April 7, 2006) Rather, he argues that "reporting an item to a credit bureau does constitute an attempt to collect a debt, even though it is not as overt as sending letters, making telephone calls or filing suit." (Pl.'s Renw.'d Resp. to Summ. J. 2.) Plaintiff cites and the Court can find no authority for this apparently novel proposition. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); *Wright v. Finance Service of Norwalk, Inc.*, 22 F.3d 647, 653 (6th Cir. 1994). Since CCS made no attempt to collect against Breed, a plain reading of the FDCPA requires that any cause of action under that statute be dismissed.

II.

Defendants Trans Union and CCS both argue that Plaintiff's FCRA claims should be dismissed for lack of evidence. Plaintiff's FCRA claim is brought under 15 U.S.C. § 1681e(b), which requires consumer reporting agencies "follow reasonable procedures to assure maximum possible accuracy" when preparing a consumer report. Although a showing of inaccuracy is an

2

essential element of a claim under § 1681e(b), the FCRA does not impose strict liability for incorrect information appearing on an agency's credit reports. *See Spence v. TRW. Inc.*, 92 F.3d 380, 382-83 (6th Cir.1996). Liability flows only from a "failure to follow (1) reasonable procedures (2) to assure maximum possible accuracy of the information (3) concerning the individual about whom the information relates." *Bryant v. TRW. Inc.*, 689 F.2d 72, 78 (6th Cir.1982). The exercise of reasonable care is determined by reference to what a reasonably prudent person would do under the circumstances. *Id.* In order to assert a claim under § 1681e(b), a plaintiff must prove: (1) the defendant reported inaccurate information about the plaintiff; (2) the defendant either negligently or willfully failed to follow reasonable procedures to assure maximum possible accuracy of the information about the plaintiff; (3) the plaintiff was injured; and (4) the defendant's conduct was the proximate cause of the plaintiff's injury. *Morris v. Credit Bureau of Cincinnati, Inc.*, 563 F.Supp. 962, 967 (S.D.Ohio 1983). *See also Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir.1996). Defendants argue that Plaintiff has failed to present sufficient evidence of several of these elements. The Court will consider each relevant element.

A.

The first element that Plaintiff must prove is that Defendants reported inaccurate information about Plaintiff. *Morris*, 563 F.Supp. at 967. Defendants argue that Plaintiff has failed to provide sufficient evidence that defendant ever reported inaccurate information. They contend that there has been no and can be no showing that Trans Union ever furnished a consumer report with the subject account to any third party. "A showing of inaccuracy is an essential element of a claim under the Fair Credit Reporting Act." *Spence v. TRW, Inc.*, 92 F.3d

380, 382 (6th Cir. 1996). So far as the Court can discern, Plaintiff has produced a July 22, 2005 consumer disclosure that lists credit inquiries to Trans Union from creditors over a two-year period, as well as several letters from creditors denying him credit. He alleges that a derogatory statement on his credit report, furnished to various creditors, negatively affected the interest rates at which he was able to obtain loans and caused him to be rejected from several car loans. Although Plaintiff has not produced a credit report listing the inaccuracy, he may have produced enough to create a question of fact. At this point, interpreting the facts in the light most favorable to the non-moving party is best left to a consideration of all the evidence actually admitted at trial on this element of the cause of action.

B.

The second element Plaintiff must prove is that Defendants either negligently or willfully failed to follow reasonable procedures to assure maximum possible accuracy of the information about the plaintiff. *Morris*, 563 F.Supp. at 967. This issue is one of fact upon which the Court refrains from ruling at this time. Upon hearing the actual evidence, the Court will entertain appropriate motions.

C.

The third element Plaintiff must prove is that he was injured. *Morris*, 563 F.Supp. at 967. Defendant Trans Union challenges Plaintiff's damages estimate of "$143,000.00 or more". Plaintiff has failed to offer any evidence as to the details and calculation of his damages. He has failed to comply with multiple agreements to illuminate this figure, including an agreement to disclose the details and the calculation of his damages, an agreement to supplement his discovery responses relating to same, and an agreement to provide a list of relevant mortgages and loans.

This Court has also issued two Orders compelling detailed damages information, and Plaintiff failed to provide the required report or any other information in that regard. Part of the problem is that proof of damages was to be provided by Craig Oliver, but now Plaintiff has decided against having him testify at trial. Now, evidence of damages will be introduced through Breed himself. A further deposition of him has been scheduled prior to trial.

The Court will refrain from ruling upon such issues until after Breed's deposition or testimony at trial. As always, proof of actual damages must be based upon evidence, rather than hearsay, supposition or speculation. In certain instances, documentary could be required to prove actual damages.

D.

The fourth element Plaintiff must show is that Defendants' conduct was the proximate cause of the plaintiff's injury. Defendants argue that Plaintiff has failed to show any causation. They contend that Plaintiff has not and cannot show that the disputed negative trade line was the reason for any denial of the extension of credit to Plaintiff. To establish liability, the Plaintiff must show that an inaccurate entry on his credit report was a "substantial factor" in bringing about the denial of credit. *Enwonwu v. Trans Union, LLC*, 364 F.Supp.2d 1361, 1366 (N.D. Ga. 2005). Plaintiff has produced three letters denying credit, two of which list "derogatory public record or collection filed" among the reasons for the denial. The third denial, from U.S. Bank, does not list the reason for the denial. Again, such denials create a question of fact as to whether an inaccurate entry on his credit report was a "substantial factor" in bringing about the denial of credit. The burden remains with Plaintiff to make such a showing at trial. *See id.*

III.

Defendant CCS has moved to exclude the testimony of Plaintiff's witness Jeffrey McQueen. CCS first argues that he has no relevant testimony to offer because he was a mortgage broker who assisted Plaintiff with loans for his investment properties.[1] Since the Court has not precluded damages for injuries arising from transactions involving Breed's investment properties, testimony as to such transactions is not irrelevant.

CCS also argues that McQueen's testimony should be excluded because he has no knowledge of credit scoring. McQueen is a loan officer who helped Breed obtain nonowner occupied loans. Although he cannot say exactly how much a negative tradeline would affect Breed's score, he did assist Breed in obtaining loans and can testify as a lay witness to that process.

The Court will enter an order consistent with this Memorandum Opinion.

cc:   Counsel of Record

---

[1] At the time CCS filed its motion, the Court had held that damages arising from commercial transactions could not be recovered, and so testimony about transactions involving investment properties might be considered irrelevant. The Court has since reconsidered that position and now permits claims for such damages to proceed.